UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT
SOUTHERN DIVISION

STEPHEN DERFINY,

    Plaintiff,

vs.

NO: 00-71237

HON: DENISE PAGE HOOD

MAGISTRATE JUDGE CAPEL

PONTIAC OSTEOPATHIC HOSPITAL, a
Michigan non-profit corporation,

    Defendant.

_____/

SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
BY:    JUSTIN C. RAVITZ (P19257)
        RICHARD L. GROFFSKY (P32992)
        PATRICIA A. STAMLER (P35905)
        JAY G. YASSO (P45484)
Attorneys for Plaintiff
2000 Town Center
Suite 900
Southfield, MI 48075-1100
(248) 355-0300

_____/

## COMPLAINT AND DEMAND FOR JURY

There is a previous Complaint presently filed
before the Honorable Arthur Tarnow, Case No: 99-75331,
arising out of the same facts and transactions.

NOW COMES Plaintiff, STEPHEN DERFINY, by and through his attorneys, **SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.**, and for his Complaint against the above Defendant states as follows:

## PARTIES

1. Plaintiff was for all times relevant to this Complaint a resident of Oakland County, Michigan.

2. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, was at all times relevant hereto, a corporation duly organized and existing under and by virtue of the laws of the State of Michigan and operated a hospital commonly known as PONTIAC OSTEOPATHIC HOSPITAL, located in the City of Pontiac, County of Oakland, State of Michigan; and that at all times relevant hereto, and for many years past, said Defendant has been engaged in the operation of said hospital, pursuant to MCLA 333.21521, MCLA 333.20141 and MCLA 333.21513, where persons afflicted with illness and disease are given care and treatment for a consideration.

3. That at all times pertinent hereto, Defendant, PONTIAC OSTEOPATHIC HOSPITAL, represented and held out to the public and, in particular, to the Plaintiff, that said hospital was equipped, qualified and prepared to receive the public and, in particular, Plaintiff STEPHEN DERFINY, for treatment and care and that it employed and maintained on its staff skilled and competent physicians, surgeons, residents, interns, nurses, and, in general, competent help otherwise in the conduct and operation of said Hospital.

4. That all times pertinent hereto, Defendant PONTIAC OSTEOPATHIC HOSPITAL'S apparent, ostensible, implied and/or express agents were employed by Defendant, PONTIAC OSTEOPATHIC HOSPITAL, and were acting within the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described were committed, thereby imposing vicarious liability upon Defendant, PONTIAC OSTEOPATHIC HOSPITAL, by reason of the Doctrine of Respondeat Superior.

2

5. That at all times relevant hereto, Defendant, PONTIAC OSTEOPATHIC HOSPITAL, had, for all times relevant to this Complaint, entered into an agreement with the County of Oakland whereby the former would allow its employees, servants and/or agents to provide medical services to inmates at the Oakland County Jail and, in particular, to Plaintiff, STEPHEN DERFINY, when the acts of negligence and malpractice hereinafter set forth and described were committed, thereby imposing vicarious liability upon Defendant, PONTIAC OSTEOPATHIC HOSPITAL, by reason of the Doctrine of Respondeat Superior.

6. In addition to the acts of negligence and/or malpractice hereinafter set forth and described, for which Defendant PONTIAC OSTEOPATHIC HOSPITAL is vicariously liable, Plaintiff asserts that said Defendant was guilty of active and/or passive negligence and/or malpractice by the reason of the acts of Defendant, as well as and including the acts and/or failure to act on the part of all hospital personnel and ancillary personnel.

7. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, is responsible for the operation of its Hospital, the selection of the medical staff, and for the quality of care rendered in said Hospital pursuant to MCLA 333.21521, MCLA 333.20141 and MCLA 333.21513.

8. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, owed the Plaintiff the duty to provide him with physicians, professional nursing, technical and support personnel, and the technical, diagnostic and treatment services and equipment necessary to assure the safe performance of the health care undertaken by or in its facility.

## JURISDICTION AND VENUE

9. Plaintiff's claims arise under 42 U.S.C. § 1983 and the laws of the State of Michigan, to redress the deprivation under color of state law, rights, privileges and immunities secured to Plaintiff by the Constitutions of the United States and the State of Michigan.

3

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3) and 28 U.S.C. § 1331.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b).

12. Plaintiff's state law claims arising out of the deprivations of his federal civil rights are proper before this Court pursuant to pendent jurisdiction of this Court.

## GENERAL ALLEGATIONS

13. On or about May 5, 1997, Plaintiff was incarcerated in the Oakland County Jail.

14. At the time of Plaintiff's incarceration on May 5, 1997, he was an insulin dependent diabetic.

15. On or about May 5, 1997, Plaintiff underwent an initial screening at Oakland County Jail where Plaintiff advised personnel at the Jail that he was an insulin dependent diabetic.

16. Upon entering the Oakland County Jail on or about May 5, 1997, the County Jail's agents/employees took away Plaintiff's glucometer due to alleged "limited storage space".

17. From May 5, 1997, and dates thereafter and until the date of his release from the Jail, Defendant PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, recorded Plaintiff's blood sugars to be anywhere from as high as at least **448** and at least as low as **26** during the course of his incarceration.

18. On or about December 5, 1997, Plaintiff requested to be seen by an optometrist.

19. On or about December 8, 1997, Plaintiff complained to Defendant PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants at the Jail Clinic of blurred vision and advised said Defendant that he had blurred vision for several days preceding his visit to the Clinic.

4

20. On or about December 10, 1997, Plaintiff complained again of vision problems including cloudy vision.

21. On or about December 13, 1997, Plaintiff informed Defendant that his eyes had been hazy for about one week.

22. On or about December 15, 1997, in addition to his fasting blood sugar of **403**, Plaintiff was reported to be "sluggish".

23. On or about December 16, 1997, it was noted that Plaintiff had decreased vision.

24. On or about December 19, 1997, Plaintiff complained again that he was experiencing decreased vision over the preceding week.

25. On or about December 31, 1997, Plaintiff again complained about his eyesight.

26. On or about January 3, 1998, Plaintiff complained again about his vision.

27. On January 6, 1998, Plaintiff was diagnosed as having a retina detachment, proliferative diabetic retinopathy (PDR) in his right eye and vitreous hemorrhage in the left eye.

28. On or about March 10, 1998, Plaintiff was brought to Oakland County's Clinic after being found in his cell with decreased responsiveness. At that juncture, Plaintiff's blood sugar level was **47**.

29. Plaintiff was found non-responsive in his cell and was transported to Defendant PONTIAC OSTEOPATHIC HOSPITAL via ambulance. At that juncture, he had a blood sugar level of **40**.

30. On March 11, 1998, Plaintiff was released from the Oakland County Jail.

31. During Plaintiff's incarceration, his glucose level was not checked consistently by Defendant PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants.

5

32. Throughout Plaintiff's incarceration, on nearly every occasion when Plaintiff's glucose level was checked, it was either elevated, often times dangerously elevated, or dangerously low.

33. During the course of Plaintiff's incarceration in the Oakland County Jail, multiple incident reports were filed on Plaintiff pertaining to hypoglycemic or hyperglycemic reactions.

34. During the course of Plaintiff's incarceration, Defendant PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, failed to monitor Plaintiff's vision until he was diagnosed on January 6, 1998, with severe proliferative diabetic retinopathy.

35. Plaintiff is now blind.

36. Plaintiff's diabetic condition is an easily manageable medical problem if proper medical treatment is timely rendered.

37. Defendant PONTIAC OSTEOPATHIC HOSPITAL observed and knew or should have known that Plaintiff was suffering from serious medical needs which required careful monitoring and provision of proper medical services. Yet, Defendant PONTIAC OSTEOPATHIC HOSPITAL took no reasonable action to provide proper medical care to Plaintiff.

## COUNT I

## CONSTITUTIONAL VIOLATIONS/SECTION 1983

38. Plaintiff incorporates by reference paragraphs 1 through 37.

39. Defendant PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, owed Plaintiff the duty of protecting his state and federal constitutional rights, including the following guaranteed rights:

    a. The right to adequate medical care while in the custody of the Oakland County Jail;

    b. The right to be free from bodily harm and injury caused unjustifiably while in the custody of the Oakland County Jail; and

    c. The right to his well-being.

6

40. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, acting under color of state law, violated these rights by denying Plaintiff adequate medical attention to a serious medical need, in allowing him to have uncontrolled glucose levels, resulting in severe hypoglycemic and hyperglycemic reactions, resulting in permanent injury to his vision including, but not limited to proliferative diabetic retinopathy and resulting in diabetic ketoacidosis, in violation of the United States Constitution Amendments 8 and 14, which is actionable under 42 U.S.C. § 1983 and the Michigan Constitution.

41. Defendant PONTIAC OSTEOPATHIC HOSPITAL'S conduct constituted deliberate indifference to Plaintiff's serious medical needs and constituted unnecessary and wanton infliction of pain proscribed by the 8th Amendment to the United States Constitution and is actionable under 42 USC § 1983.

42. As a result of Defendant's actions and omissions, Plaintiff has suffered damages which include, but are not limited to, the following: physical pain and suffering, permanent loss of vision, diabetic ketoacidosis, mental anguish and loss of enjoyment of life; loss of earnings; future loss of earning capacity; humiliation; depression; embarrassment; torment and anxiety and damages are permanent and will continue indefinitely into the future.

WHEREFORE Plaintiff respectfully requests that this Court enter a judgment against Defendant, PONTIAC OSTEOPATHIC HOSPITAL, for the amount said Plaintiff is found to be entitled, as determined by the trier of fact, together with punitive damages, interests, costs, attorneys' fees, including but not limited to such attorneys' fees as are allowable under 42 U.S.C. § 1988.

## COUNT II

### VIOLATION OF STATE AND FEDERAL RIGHTS AS TO DEFENDANT PONTIAC OSTEOPATHIC HOSPITAL

43. Plaintiff hereby incorporates by reference paragraphs 1 through 42, inclusive.

44. Defendant PONTIAC OSTEOPATHIC HOSPITAL is responsible for the maintenance and operation of its hospital and the hiring, training and supervision of its personnel who work within the Jail facility and come in contact with Jail detainees.

45. Defendant PONTIAC OSTEOPATHIC HOSPITAL'S duties to Plaintiff include the duty to implement and monitor an adequate screening and classification system for persons detained within the Oakland County Jail. In addition, the duties include the duty to implement and monitor an adequate hiring and training program for all employees, servants and/or agents of Defendant Hospital that work within the Oakland County Jail.

46. Defendant PONTIAC OSTEOPATHIC HOSPITAL failed in the above duties by failing to implement an adequate screening and classification program of Jail detainees so that persons with the medical maladies of diabetes mellitus, like Plaintiff experienced, could be identified and properly handled.

47. Defendant PONTIAC OSTEOPATHIC HOSPITAL failed in its duties to adequately train its employees, servants and/or agents, and has historically had a policy, custom and/or practice of failing to implement an adequate training program to properly train its personnel.

48. Defendant PONTIAC OSTEOPATHIC HOSPITAL adopted, ratified and/or implemented the policies, practices and procedures which denied Plaintiff medical care and treatment and did so with deliberate indifference to their effect upon Plaintiff's constitutional rights.

49. The acts and omissions of Defendant PONTIAC OSTEOPATHIC HOSPITAL taken pursuant to the de facto policies, practices and procedures, adopted, ratified, and/or implemented by Defendant, impermissibly condone and allow the denial of proper medical care and treatment to residents of the Oakland County Jail such as Plaintiff and amount to deliberate indifference to the denial of such detainees' civil rights as guaranteed by the United States Constitution.

50. The acts and omissions of Defendant PONTIAC OSTEOPATHIC HOSPITAL constituted deliberate indifference to the serious and apparent medical needs of Plaintiff in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and hence are actionable under 42 U.S.C. § 1983.

51. Despite the Defendant's knowledge of said illegal policies, practices and procedures, said Defendant:

   a. Failed to take appropriate and necessary steps to discover and determine that said policies, practices and procedures had and would continue to result in injuries to Plaintiff, and those similarly situated;

   b. Failed to discipline and properly supervise the Defendant's employees, servants and/or agents who engaged in said actions pursuant to these policies, practices and procedures which resulted in Plaintiff's severe injuries;

   c. Failed to effectively train and supervise the said individual Defendant with regard to the proper constitutional and statutory limits to their authority;

   d. Ratifying said policies, practices and procedures which caused Plaintiff severe injury through their deliberate indifference to the effect of said policies, practices and procedures on the constitutional rights of citizens such as Plaintiff;

   e. Failed to formulate or adopt appropriate policies, practices, procedures and to instruct and train employees and Jail personnel in the implementation of such policies, practices and procedures to protect inmates similarly situated to Plaintiff; and

   f. Adopted and ratified policies, practices and procedures which constituted violations of the United States and Michigan constitutions or played a significant causal role in the denial of the constitutional rights of Plaintiff.

52. As a result of the above acts and omissions, Plaintiff suffered the previously-mentioned damages.

WHEREFORE, Plaintiff claims judgment against the Defendant, PONTIAC OSTEOPATHIC HOSPITAL, a Michigan non-profit corporation, for whatever amount said Plaintiff is found to be entitled, as determined by the trier of fact, together with punitive damages, interests, costs, attorneys' fees, including but not limited to such attorneys' fees as are allowable under 42 U.S.C. § 1988.

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C. • (248) 355-0300
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075

## COUNT III

## STATE LAW VIOLATION, GROSS NEGLIGENCE

53. Plaintiff hereby incorporates by reference paragraphs 1 through 52, inclusive.

54. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, owed a duty to Plaintiff, as a resident of Oakland County Jail, to provide him with appropriate and reasonable medical care consistent with the appropriate community standard including, but not limited to:

   a. Properly monitoring Plaintiff's health and physical condition;

   b. Responding in a timely and appropriate manner to Plaintiff's repeated efforts to secure essential medical help;

   c. Providing him with proper medication;

   d. Regularly examining Plaintiff for signs and symptoms of medical illness and disease which includes, but is not limited to, diabetes, vision problems, proliferative diabetic retinopathy and diabetic ketoacidosis because Plaintiff could not seek out medical attention on his own; and

   e. Detecting signs and symptoms of proliferative diabetic retinopathy and diabetic ketoacidosis and providing timely intervention of same.

55. Despite Defendant PONTIAC OSTEOPATHIC HOSPITAL'S knowledge of the on-going suffering of Plaintiff, Defendant refused to take reasonable steps to provide for his safety and provide medical attention, and at variance with the prevailing standards, were grossly negligent in the following particulars:

   a. Failing and neglecting to monitor Plaintiff's blood glucose levels with at least twice daily blood glucose level checks;

   b. Failing and neglecting to administer to Plaintiff proper insulin dosage according to his blood sugar levels;

   c. Failing to monitor Plaintiff's blood glucose levels on even a daily basis; with several unexplained lengthy omissions in care;

   d. Failing and neglecting to reasonably and prudently address Plaintiff's persistent hyperglycemia and hypoglycemia;

10

e. Failing and neglecting to address Plaintiff's elevated lab results citing risks of diabetic retinopathy of greater than 9.6;

f. Failing and neglecting to provide Plaintiff, an insulin dependent diabetic for 25 years, with an eye examination;

g. Failing and neglecting to refer Plaintiff to a specialist(s) to evaluate and treat his vision, diabetics and/or ketoacidosis;

h. Failing and neglecting to take heed of the seriousness of Plaintiff's deteriorating condition when they knew or should have known that Plaintiff was an insulin dependent diabetic, with persistent hyperglycemia and hypoglycemia which could cause and did cause severe injury to Plaintiff if not properly attended to;

i. Failing and neglecting to transport Plaintiff on multiple occasions following his loss of consciousness due to dangerously low blood sugar levels and instead allowing him to suffer in his cell;

j. Failing and neglecting to investigate and communicate the severity of Plaintiff's condition when he was clearly suffering from diabetic related problems;

k. Failing and neglecting to follow and/or implement proper policies and procedures from medical evaluations and screening evaluations;

l. Failing and neglecting to follow and/or implement proper policies and procedures for administering prescription medication to Plaintiff;

m. Failing and neglecting to provide Plaintiff with the necessary medical supplies, including a glucometer to monitor his blood sugar levels;

n. Failing and neglecting to order Plaintiff for immediate hospitalization and provide the necessary treatment for the well-known dangers of his condition;

o. All other acts of gross negligence to be discovered throughout the course of this litigation.

56. Defendant's conduct in withholding medical healthcare was grossly negligent in that said conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury to Plaintiff resulted.

57. As a direct and proximate result of Defendant's aforesaid gross negligence, Plaintiff sustained the damages previously enumerated, which are incorporated by reference herein.

WHEREFORE, Plaintiff claims judgment against the Defendant, PONTIAC OSTEOPATHIC HOSPITAL, a Michigan non-profit corporation, for an amount said Plaintiff is found to be entitled, as determined by the trier of fact, together with interests, costs and attorneys' fees.

### COUNT IV

### MEDICAL MALPRACTICE AGAINST PONTIAC OSTEOPATHIC HOSPITAL

58. Plaintiff incorporates by reference paragraphs 1 through 57, inclusive.

59. That at all times pertinent hereto, Defendant PONTIAC OSTEOPATHIC HOSPITAL represented and held out to the public and, in particular, the Plaintiff, that said Hospital was equipped, qualified and prepared to receive the public and, in particular, the Plaintiff, STEPHEN DERFINY, for treatment and care and that it employed and maintained on its staff skilled and competent physicians, surgeons, residents, interns, nurses and, in general, competent help otherwise in the conduct and operation of said Hospital

60. At all times pertinent hereto, Defendant PONTIAC OSTEOPATHIC HOSPITAL'S apparent, ostensible, implied and/or express agents were employed by Defendant, PONTIAC OSTEOPATHIC HOSPITAL, and were acting within the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described, were committed, thereby imposing vicarious liability upon Defendant, PONTIAC OSTEOPATHIC HOSPITAL, by reason of the Doctrine of Respondeat Superior.

61. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, owed Plaintiff the duty to possess that reasonable degree of learning and skill that is ordinarily possessed by physicians and to use reasonable care and diligence in the exercise of their skill and application of their learning in the care and treatment of Plaintiff in accordance with the standards prevailing throughout the nation.

12

62. At all times pertinent hereto, Defendant, PONTIAC OSTEOPATHIC HOSPITAL, undertook to diagnose and treat Plaintiff when it was contacted by members of the Oakland County's Sheriff's Department, who informed them of Plaintiff's medical condition.

63. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, and acting as agents for Oakland County and being informed of Plaintiff's medical condition, had the duty to provide medical attention to Plaintiff pursuant to the appropriate standard of care in the community for persons suffering from the same or similar ailments as Plaintiff.

64. Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, acted in disregard of its duties and obligations to Plaintiff and at variance with the prevailing standards were negligent and engaged in malpractice in the following particulars:

    a. Failing and neglecting to provide Plaintiff with the proper and necessary care and treatment;

    b. Failing and neglecting to treat Plaintiff in accordance with the standard of care for physicians specializing in internal medicine, diabetes and family medicine;

    c. Failing to exercise and employee the requisite degree of skill and knowledge in their treatment of Plaintiff;

    d. Failing and neglecting to draft, promulgate, adopt, implement and/or enforce appropriate rules, regulations, policies, procedures and orders which would and should have resulted in the appropriate and timely treatment of Plaintiff's condition, all of which could and should have been accomplished;

    e. Failing and neglecting to draft, promulgate, adopt, implement and/or enforce appropriate rules, regulations, policies, procedures and orders which would and should have resulted in the appropriate and timely supervision of all physicians, including Defendant's doctors, to ensure the safe performance of the healthcare undertaken at Oakland County Jail and at Pontiac Osteopathic Hospital, all of which could and should have been accomplished;

    f. Failing and neglecting to immediately have Plaintiff brought to the medical facility for purposes of a complete medical examination, diagnosis and treatment when Defendant's doctors knew or should have known that his condition was serious;

g. Failing and neglecting to refer Plaintiff to a specialist(s) to evaluate and treat his vision, diabetes and/or ketoacidosis;

h. Failing to prescribe the appropriate amount of insulin and administer the appropriate amount of insulin to Plaintiff who was suffering from a potentially life-threatening illness;

i. Failing to provide Plaintiff with the appropriate medical device, a glucometer, to allow Plaintiff to monitor his blood sugar levels;

j. Failing and neglecting to request a full and complete medical evaluation of Plaintiff;

k. Failing and neglecting to ask the proper questions about Plaintiff's condition which and could have led to timely medical intervention of Plaintiff's condition; and

l. All other acts of negligence/malpractice to be discovered throughout the course of this litigation.

65. The acts and/or omissions constituting negligence and/or malpractice of the Defendant, PONTIAC OSTEOPATHIC HOSPITAL, through its employees, agents and/or servants, as heretofore alleged, directly and proximately caused and/or contributed to Plaintiff's severe injuries as previously specified in the preceding paragraphs and incorporated herein.

WHEREFORE, Plaintiff seeks judgment against this Defendant for an amount that Plaintiff is found to be entitled, as determined by the trier of fact, together with interests, costs and attorneys' fees.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

SOMMERS, SCHWARTZ,
SILVER & SCHWARTZ, P.C.

JUSTIN C. RAVITZ (P19257)
RICHARD L. GROFFSKY (P32992)
PATRICIA A. STAMLER (P35905)
JAY G. YASSO (P45484)
Attorneys for Plaintiff
2000 Town Center, Suite 900
Southfield, MI 48075-1100
(248) 355-0300

DATE: March 8, 2000

14